Case number 15-7048. Andrew Johnson et al. Appellants v. District of Columbia Municipal Corporation. Ms. Hunt for the amicus curiae, Mr. Love for the affilee. Ms. Hunt, good morning. Good morning. Hylin Hunt, arguing on behalf of appointed amicus in support of appellants Mr. Johnson and Dr. Harp. This case involves two long-term employees of the District of Columbia Public Schools with good track records over age 60 who were quickly terminated and replaced with younger employees after implementation of a new evaluation system, IMPACT, a system that disproportionately terminated older employees. A reasonable jury could find that their evaluations were inaccurate and false and were in fact pretext to discriminate against them because of their age. Specifically, in Mr. Johnson's case, a reasonable jury could find his timeliness score was wrong, DCPS did not reasonably believe his score to be accurate, but it fired him anyway, it was the result of his supervisor, Dr. Mitchell, who controlled all of the inputs to that timeliness score, and who personally selected a psychologist nearly 30 years younger than Mr. Johnson to replace him. That prima facie case plus evidence of pretext is enough for a jury to find discrimination, but there is more here. A reasonable jury could also find that Dr. Mitchell made comments reflecting her attitude Before you get to that, I'll just ask you a question about the procedural flaw that you have identified, the alleged procedural flaws, is that his timeliness evaluation, as I understand it, should have been, the timeliness clock should have started running in November instead of September, is that right? Yes, Your Honor, that's at least one of them. I would actually identify sort of an antecedent procedural flaw, which was Dr. Mitchell directing Mr. Johnson to complete the report before the student was actually placed back on his caseload, which she testified in her deposition, her first deposition, it was not protocol to ask someone to complete a report not on the caseload. A reasonable jury could find that although she directed that JF be added back, So I think that's a procedural flaw, but also the fact that she did not update the date to November. What in the record indicates that DCPS policy required that? Is there anything? I think there are two things, Your Honor. One is that the date runs for 45 days from the time a report and assessment is ordered. In this case, the original assessment, no one disputes, or at least all of the record evidence indicates, ended. It dropped because the student left the school. So this assessment that was needed for a court hearing was in fact a new assessment that required a new order date. The second piece of information that indicates that is testimony by Klosterman McMahon that if what Mr. Johnson said in his appeal were true, then the score was inaccurate. And what he said in his appeal to the review board was, the student dropped off my case because she left the school. I was ordered to complete the report anyway. That is exactly what happened. So that shows that DCPS policy reflects that that score was inaccurate. Can I ask again, you said the antecedent issue, how did you phrase it? Ordering him to complete a report before his caseload was actually adjusted to reflect that student. And I think that in part was responsible for the inaccurate score, which I want to emphasize is also not inaccurate only because of JF. There's also the issue that it only included three reports. But with respect to that, ordering him to complete the report before JF was added back to his caseload was, she said earlier he was dinged in the prior year for completing or working on reports for students that were not on his caseload. And in her first deposition, she testified if Mr. Johnson was directed to do a report for a student not on his caseload, that was not protocol. But that is exactly what she directed him to do. Now, she simultaneously directed that JF be re-added, but she did not either make sure that happened, even though she testified that was her responsibility to do. It didn't fix the inaccuracy because she didn't update the order date. And she also required Mr. Johnson to complete the report before the student was actually re-added to his caseload. But is there evidence that, as to whether the student should have been part of the mix, because is there evidence from which a reasonable jury can conclude that Mitchell was being dishonest about it, about that question? I'm sorry, as to whether? Well, the antecedent question, as I understand it, is whether the student should have been included as part of the caseload to begin with, right? I think the question is whether the student should have been, or the question where the fact dispute is, is whether or not the student was actually re-added to the caseload. Yeah. Whether they were part of the caseload, right. Whether they were part of the caseload. I think, well, I think there's no fact, I mean, I think Dr. Mitchell agrees the student dropped off the caseload. She testified as much. So, there's no dispute that the student dropped off. And that alone is enough. The fact that the student not being continuously assigned, according to the testimony, which is at 271, where the district's representative said, if what Mr. Johnson said was true, that the student dropped off. But, so the student had dropped off, but then Dr. Mitchell thought that she was giving a simultaneous instruction to bring the student back in the fold. She did give that instruction, but she did not make sure that it was actually carried out. And the reasonable jury could find that it was not, because in December, there's an email from Mr. Johnson where he says, look, when I uploaded this report, when I completed and uploaded it, the student still wasn't on my caseload. There's nothing to indicate the student was actually ever added back. But beyond that, her simultaneous direction to add him back did not say update the order date. So, it just made things worse for him, because it now looked as if he was ordered in September to do this, and the 45-day clock had been running the whole time, and he didn't turn it in until, let's say, sometime in November. But that's not, in fact, what happened. Under district policy, that gap when the student dropped off should not have counted against him. See, what I'm having trouble with is, assume for a minute that I don't think the statements that you've identified are sufficient. And so, what you have here, and let's assume you're right about the procedural violation, that is, that this was not the way it should have been done. How can a jury conclude from that alone that this was discriminatory? I think, Your Honor, it's not just about procedural departures. It's about knowing use of inaccurate information by Dr. Mitchell and DCPS, and I think the case is on all fours with Jones v. Bernanke. In that case, there was an evaluation, a performance evaluation of an employee that said, you're getting a bad evaluation because you didn't fulfill these two projects very well. And the employee brought forth evidence that said, I wasn't assigned to one of those projects, and I was taken off one of the other ones. And in addition, there was a prima facie case, and that case is retaliation. And this court said that alone is enough. When you have a prima facie case, that's the evidence of age. That's connection. So even if we disregard the statement, we have here that Mr. Johnson was replaced, personally replaced by Dr. Mitchell, with an individual nearly three decades younger than him. And the Supreme Court said in O'Connor that that substantial disparity in age is enough to raise an inference of age discrimination, coupled with DCPS's unreasonable use of an inaccurate score, which includes both the fact that it only had three reports and the fact that J.F. was timely, is enough for a jury. It's not just a case about procedural unfairness here. If the procedures had been applied to Mr. Johnson correctly, they would have been fair. But what resulted was, in fact, a false score. And the district, and he repeated that to Dr. Mitchell, the impact office, the review board. The district was on notice, and it should not reasonably have believed in the accuracy of that score when it fired him. I'll reserve the remainder of my time for rebuttal. All right. Thank you. Mr. Love? Good morning. Richard Love for the District of Columbia. Focusing on Mr. Johnson and the issue of what exactly happened, I think the record unambiguously shows at page SJA-377 that Dr. Mitchell simultaneously directed that J.F. be added back to Johnson's caseload and that he complete her report. Now, Amicus seeks to shift the blame to Dr. Mitchell, who they assert controlled all the inputs. But the record says otherwise. At pages 361 to 362, Dr. Mitchell testifies she couldn't assign a student to a psychologist in SEDS. The special ed coordinator could, and Dr. Mitchell could direct the special education coordinator to do that, as she did here. Mr. Schechter, who she directs at page 377, to add J.F. back to Mr. Johnson's caseload was a special ed coordinator. And she also testified that a psychologist was able to assign students to his caseload, and she knew that because Mr. Johnson told her he had done that, he had added students to his caseload. Either way, it was Mr. Johnson, not Dr. Mitchell, who was responsible to ensure that J.F. was a part of his caseload and that the assessment was completely and timely entered into SEDS. That's what the record says at 366. And at page 432, there's a clear reminder to Mr. Johnson that it's his responsibility to enter completed assessments in SEDS. Moreover, there's no evidence that J.F.'s assessment was timely using either the September or the November date. The December 28th communication to Mr. Johnson at pages 431 and 432 indicates that J.F.'s assessment is untimely as of December 28th. And again, it reminds him that it is his responsibility to enter into SEDS a completed assessment. Would it have been untimely if the clock had been begun in November? Yes, it would, Your Honor. November 4th was the date that Dr. Mitchell directed that Mr. Johnson complete the report and that J.F. be added back to his caseload. Forty-five days from that would be before December 28th. So either way, it would have been late. That's correct. I see. Moreover, the entry of these reports in SEDS is a substantive component of this impact, which is an age-neutral objective performance evaluation system. And there was a reason why it was a separate substantive component. Assessment timeliness was necessary not just to ensure timeliness, but also to ensure accountability for a special education system that was under federal court review. And that's why they had a data system. That's why they had a separate substantive component, assessment timeliness, that was automatically measured by the data system. And the program managers, like Dr. Mitchell, were excluded from the process. It didn't sound like that system was a perfectly well-oiled machine. Correct. However, even if there were procedural violations, as we pointed out in our brief, I think no reasonable jury could find that Dr. Mitchell intended in November 2010, when she gave a directive that this evaluation be completed because there was a pending hearing officer case, that that would lead to an evaluation result seven months later in June 2011, which in combination with his evaluation rating from a year earlier, June 2010, would result in his termination. It's an entirely speculative and very elaborate theory. I would like to touch, if I could, just on the statistical question. I'll skip the statements unless the court has questions. But I do want to press the forfeiture argument here. You know, the statistics that Mr. Johnson relies on were one of the 75 exhibits that were attached to his summary judgment motion, but it was nowhere mentioned, no argument was based on those statistics in the actual opposition to the summary judgment motion. Moreover, there were 20 pages of disputed issues identified by Mr. Johnson, none of which referenced these statistics or made an argument based on these statistics. So the fact that the court found that there was no evidence of an impact age bias isn't an opening for consideration of these arguments. The court, as this court found in Potter v. District of Columbia, isn't required to sift through the record to identify evidence or arguments that Mr. Johnson could have identified but did not develop. Even if you look at the arguments, it's really based on a faulty premise that because 57% of the employees that had known birth dates and were evaluated under impact were 40 or older, that only 57% or 58% of those employees could be terminated under impact without indicating some discriminatory intent. I think that's a faulty premise. It's unsupported. Moreover, even using that construction, there's no substantial numerical disparity here. In the first year, it's only a 5% differential. That equates to eight employees. In the second year, it's only nine. And the Supreme Court case that the amicus identified rejected this forfeit test. It found that a case-by-case approach to judge the significance or substantiality of numerical disparity, depending on all of the facts and circumstances, was the appropriate test. Here, the surrounding facts and circumstances demonstrate that it really had no impact in diminishing the percentage of employees in DCPS that were over the age of 40. Finally, I just want to address a couple of points with regard to Dr. Harp. Amicus argues that Dr. Harp's evaluation was not based on five reports because independent educational evaluations, which were three of the five reports that Dr. Turner Wingate reviewed, are not a part of the impact rubric. And they point to JA-25 to support that proposition. That's just incorrect. JA-25, which is a page from the administrative judge's decision, says that psychological summary reports are not a part of the impact rubric. Not independent educational evaluations, which unquestionably are. If you look at Dr. Turner Wingate's evaluation at SJA-57, she says, after he clarified that, oh no, these were really independent educational evaluations, she reviewed them, and I'm quoting, per the operationalized rubric, unquote, for IEE reports, and then she says which are, and she lists the elements. So clearly they're part of the rubric. That's what the district court also found at JA-56. And she still found that using that rubric, it didn't meet the elements and it didn't merit adjusting his score. And then she also evaluated two assessment reports, so five were reviewed. The fact that Dr. Rich supervised Dr. Harp for less than 90 days on the second half of the 2009-10 evaluation, amicus claims was harmful error because the administrative judge found it was so, but the administrative judge doesn't explain why it was so. It's just a conclusion. And I think in our brief, at pages 43 and 44, we explain why it wasn't harmful error. She was reviewing evaluations per rubric she helped to develop. And finally, the problem with Dr. Harp's statistics go far beyond that they were simply unorganized. Those statistics are unanalyzed. We don't know what the dates of birth of the applicant pool are, and a third of them don't even have birth dates. So for those reasons, we think that the district court correctly entered some re-judgment in favor of the district on both Dr. Harp's claim as well as Mr. Johnson's, and we would ask that the court affirm the decisions below. All right. Thank you. Okay. There are fact disputes that the district is arguing as if they are conclusive. What about Mr. Love's argument that it would have been untimely even if the clock had started in November? If you look at SJA 431, which is the December 2010 email that was discussed, you'll see that in that email, Mr. Johnson is reporting that he had already uploaded and completed the report some time ago, and in fact the purpose of his email was sent to Dr. Mitchell to say, this is registering as untimely, and it's not. It's not correct. Here's why it's not correct, because you directed me to complete this report, et cetera. So it's not that Dr. Mitchell needed to have envisioned when she directed that JFB re-added in November 2010 this long chain of events. It's actually consistently, every time he brings this up, she does nothing to fix it, and a reasonable jury could find it was her job. The district cites it to us. Okay. What were the other? You were just going to list a couple of other facts that are immaterial. I want to make sure you get them out. Okay. One, a reasonable jury could find it was timely. That's SJA 431 and SJA 298 when he brings it up in his appeal. It was timely from the new day. Two, a reasonable jury could find it was her job to fix it. I think the best quote is at SJA 366 when she says, if you need to adjust your caseload, you do it, or notify your program manager, which he did over and over again, and she did nothing. And three, that's consistent with her attitude towards him. As an employee old enough, he should just retire. She denied knowing anything about his retirement options, so a reasonable jury could find the only reason she made that comment was because she perceived him as old. And so it's of a piece with her deliberate neglect, and that along with her replacing with a younger person is enough to get the case to a jury. It's not just about unfairness. It's about known falsity. The one other disputed fact I would add is the fact that DCPS delayed publication of the timeliness score. I think that indicates that it did not reasonably believe in the accuracy of the score either. And with that, we would ask you to reverse the district court. All right, thank you. Ms. Hutt, you were appointed to represent your two clients as a friend of the court. We thank you very much for your assistance.
judges: Henderson, Tatel, Srinivasan